IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TINA M. KOPPERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No: 15 C 5471 |
| v. ) | |
| ) | Magistrate Judge Daniel G. Martin |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tina M. Koppers ("Koppers") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Koppers asks the Court to reverse the ALJ's decision and award benefits, and the Commissioner seeks an order affirming the decision. For the reasons set forth below, the ALJ's decision is reversed and the case is remanded for further proceedings consistent with this opinion.

### I. BACKGROUND

Koppers was born on September 7, 1954 and has a history of degenerative disc disease, kidney stones, pseudotumor cerebri, headaches, glaucoma, atrial fibrillation, arthritis, sleep apnea, and anxiety. Koppers graduated from high school in June of 1972 and previously worked as a receiving manager, returns clerk, administrative clerk, and coordinator. Koppers alleges she became totally disabled on October 17, 2004 because of degenerative disc disease, pseudotumor cerebri, glaucoma, and kidney stones. Koppers' insured status for DIB purposes expired on June 30, 2010, which means Koppers had to show she was disabled on or before that date in order to be eligible for DIB. Shideler v. Astrue, 688 F.3d 308, 311 (7th Cir. 2012) (noting "the claimant must establish that he was disabled before the expiration of his insured status . . . to be eligible for disability insurance benefits.").

Koppers filed an application for DIB on August 2, 2006, alleging she became disabled on October 17, 2004. (R. 188-92). Koppers' application was denied initially and upon reconsideration. (R. 70-71, 87-91, 99-102). Koppers requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on April 1, 2008. (R. 734-773). On September 15, 2008, the ALJ issued a decision finding that Koppers was not disabled because she could perform her past relevant work as a receptionist and human resources manager. (R. 72-81). Koppers requested that the Appeals Council review the ALJ's decision. (R. 125-32). On July 2, 2008, the Appeals Council remanded Koppers' case to an ALJ. (R. 82-86).

A second hearing was held on February 10, 2011. (R. 26-69). On February 16, 2011, the ALJ issued a decision finding that Koppers was not disabled because she was able to perform her past relevant work as a human resources administrator and intake coordinator. (R. 7-25). The Appeals Council denied Koppers' request for review. (R. 1-6). Koppers appealed the ALJ's February 2011 decision to this court. On August 28, 2013, Magistrate Judge Michael T. Mason remanded Koppers' case to the Commissioner. (R. 807-32).

On remand, the ALJ held a third hearing on March 23, 2015. (R. 1258-93). On April 17, 2015, the ALJ issued a decision. (R. 774-90). Under the standard five-step analysis used to evaluate disability, the ALJ found that Koppers had not engaged in substantial gainful activity since October 17, 2004, the alleged onset date, through her date last insured of June 30, 2010 (step one); her pseudotumor cerebri, ocular hypertension, lumbar degenerative disc disease, cervical spine radiculopathy, obstructive sleep apnea, and obesity were severe impairments (step two); but that her severe impairments did not qualify as a listed impairment (step three). The ALJ determined that Koppers retained the residual functional capacity (RFC) to perform light work, except that she was further limited to work requiring no climbing of ladders, ropes, or scaffolding, no more than occasional crouching, balancing, crawling, kneeling, and stooping and no more than occasional climbing of ramps and stairs. Given this RFC, the ALJ concluded that Koppers was able to perform

her past relevant administrative and medical clerk work as either job is generally performed or her administrative clerk work as she actually performed it. (R. 789).

Koppers did not file exceptions to the ALJ's decision and the Appeals Council did not otherwise review the ALJ's decision on its own. The ALJ's April 17, 2015 decision became the final decision of the Commissioner. 20 C.F.R. § 404.984(d). Koppers now seeks judicial review of the final administrative decision of the Commissioner, which is the ALJ's decision. Id.

## II. DISCUSSION

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled within the meaning of the Act, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, see 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a) (2004); Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Clifford, 227 F.3d at 868 (quoting Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998). Finally, an ALJ's credibility determination should be upheld unless it is patently wrong. Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010).

The ALJ denied Koppers' claim at step four, finding that she retains the residual functional capacity to perform her past relevant work as an administrative clerk and medical clerk. Koppers raises numerous challenges to the ALJ's decision: (1) the ALJ improperly assessed Koppers' credibility; (2) the RFC finding is not supported by substantial evidence; (3) the ALJ failed to properly weigh the treating physician's opinion; (4) the ALJ impermissibly "played doctor" by making her own independent medical conclusions; and (5) the ALJ erred in failing to consider a later onset date. The Court agrees that the ALJ's treatment of the medical opinion of Koppers' treating physician requires a remand.

Koppers contends that the ALJ reached a flawed RFC assessment by improperly rejecting the February 13, 2008 assessment of her treating physician, Dr. Kmicikewycz. In that report, Dr. Kmicikewycz opined that Koppers could occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk less than two hours in an 8-hour workday; sit less than about 6 hours in an 8 hour-workday; never climb, balance, kneel, crouch, or crawl; reach occasionally; handle frequently; was limited in pushing and/or pulling in her upper and lower extremities; and should be limited in her exposure to vibration and hazards. (R. 569-71).

The opinion of a treating physician is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions

and circumstances." Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons'" for discounting a treating physician's opinion. Campbell v. Astrue, 627 F.3d 299, 306 (7th Cir. 2010). The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. If an ALJ does not give a treating physician's opinion controlling weight, she must evaluate six factors to determine how much weight to afford the opinion: (1) the examining relationship; (2) the nature and length of the treatment relationship; (3) whether the opinion is supported by relevant evidence; (4) consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

The ALJ "no weight" to the opinion of Dr. Kmicikewycz. (R. 788). The ALJ gave three reasons for rejecting Dr. Kmicikewycz's opinion: (1) records from Dr. Kmicikewycz are primarily medication refill notations; (2) the limitations found by Dr. Kmicikewycz are in excess of the level of limitation alleged by Koppers in her testimony at the hearings in 2008, 2011, and 2015; and (3) Dr. Kmicikewycz's opinion is not supported by the medical evidence. (R. 788). None of these qualifies as a good reason, and the ALJ's refusal to give any weight to Dr. Kmicikewycz's opinion is therefore not supported by substantial evidence.

In rejecting Dr. Kmicikewycz's opinion, the ALJ claims that records documenting Koppers treatment with Dr. Kmicikewycz were "primarily merely medication refill notations." (R. 788). Koppers raised this issue in her prior appeal, and Magistrate Judge Mason found that the ALJ did not properly evaluate Dr. Kmicikewycz's records in this regard. Magistrate Judge Mason stated:

> In not assigning "controlling or great weight" to Dr. Kmicikewycz's opinion, the ALJ first wrote that the doctor's "treatment notes mainly just refills the claimant's prescriptions [sic]." (R. 19). In so concluding, the ALJ improperly failed to address the facts that Dr. Kmicikewycz had been Koppers' physician for over twenty years. (R. 745), that Koppers had visited him roughly three times a year since her AOD, and that his notes appear to be equally comprised of comments regarding Koppers

"progress" and her test results. (*E.g.*, R. 745, 577-603, 675-93). (R. 828-29). As Magistrate Judge Mason has already found, the ALJ's description of Dr. Kmicikewycz's notes as for primarily medication refills is not support by substantial evidence.

The ALJ also attempts to discredit Dr. Kmicikewycz's opinion on the ground that Koppers' testimony contradicted it. The ALJ points to no evidence on which she bases her conclusion that Dr. Kmicikewycz's opinion deserved to be completely rejected because it was contradicted by Koppers' testimony. (R. 788). The ALJ was obligated to explain her reasons for finding that Dr. Kmicikewycz's opinion contradicted Koppers' testimony. Further, the Court does not find Koppers' testimony of her functional limitations to be inconsistent with Dr. Kmicikewycz's opinion. For example, Dr. Kmicikewycz found that Koppers could occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds. (R. 569). On April 1, 2008, Koppers testified that she could lift ten pounds. (R. 753). At the second hearing on February 10, 2011, Koppers testified that she could lift and carry five pounds. (R. 43). During the third hearing on March 23, 2015, Koppers testified that she could lift and carry five to ten pounds. (R. 1276).

Koppers' testimony regarding her ability to stand and walk also does not necessarily contradict the limitations assessed in Dr. Kmicikewycz's opinion. Dr. Kmicikewycz opined that Koppers could stand and/or walk less than 2 hours in an 8-hour workday. (R. 569). During the first hearing on April 1, 2008, Koppers testified that over 8 hours, she could maybe stand two hours and walk an hour-and-a-half. (R. 754). At the second hearing, Koppers confirmed that she has a "very bad time standing," could only stand a couple of minutes at a time, and could walk seventy five feet. (R. 43). At the most recent hearing, Koppers testified that she could stand for 10 minutes at a time in 2004 and walk seventy five feet. (R. 1276). As Magistrate Judge Mason noted in his opinion, Dr. Kmicikewycz's opinion that Koppers can "stand and/or walk" for less than two hours total during an eight-hour workday is not necessarily inconsistent with Koppers' testimony at the first hearing that she could walk for one and a half hours during an eight-hour workday and stand for two hours during

an eight-hour workday. (R. 829). Judge Mason explained: "It is unclear from the sequence of the ALJ's questions and Koppers' answers whether Koppers was describing her standing and walking abilities during a single eight-hour period, or two such periods. The ALJ's failure to clarify that issue precludes us from determining whether her comparison of that testimony with the physician's opinion is appropriately 'apples to apples.'" (R. 830). Because the ALJ failed to again clarify this issue, it remains unclear whether Dr. Kmicikewycz's opinion regarding Koppers' ability to stand and walk is at all inconsistent with Koppers' testimony at the first hearing.

Dr. Kmicikewycz further found that Koppers can sit less than about 6 hours in an 8-hour workday. (R. 570). Dr. Kmicikewycz's assessment regarding Koppers' limitations as to sitting is supported by Koppers' testimony. At the first hearing, Koppers testified that she could sit less than fours in a day. (R. 754). During the second and third hearings, Koppers was not asked how many total hours she could sit in an 8-hour day, but she did testify that she could not sit for long periods of time and could sit for a half hour before needing to stand up. (R. 39, 1275). As such, there does not appear to be a conflict between Dr. Kmicikewycz's opinion and Koppers' testimony. Substantial evidence therefore does not support the ALJ's assessment that Dr. Kmicikewycz's February 2008 opinion contradicts Koppers' testimony about her abilities.

With respect to the third reason – the alleged lack of support in the medical record for Dr. Kmicikewycz's opinion – the ALJ made two errors. First, the ALJ did not indicate which parts of Dr. Kmicikewycz's opinion she found to be lacking support in the medical record. In fact, the ALJ cited no specific portions of Dr. Kmicikewycz's opinion at all. Second, the ALJ failed to cite any specific medical evidence in the record to support her conclusion that the treating physician's assessment was inconsistent with the record. While an ALJ need not discuss every piece of evidence in the record, she must build a logical bridge between the evidence and her conclusion. Richards v. Astrue, 370 Fed. Appx. 727, 730 (7th Cir. 2010) (quoting Clifford, 227 F.3d at 872). The ALJ must identify some evidence to support her conclusion. By failing to specify what evidence she found

inconsistent with Dr. Kmicikewycz's opinion, the necessary logical bridge between the record evidence and the ALJ's decision to reject the opinion of Koppers' treating physician is missing.

Besides the ALJ's failure to provide good reasons for rejecting the opinion of Dr. Kmicikewycz, the ALJ did not adequately consider the applicable regulatory factors. 20 C.F.R. § 404.1527(c). Outside of her bare assertion that Dr. Kmicikewycz's conclusions lacked support in the medical record, the ALJ did not articulate any analysis of the statutory factors with respect to Dr. Kmicikewycz's opinion. The ALJ mentioned that Dr. Kmicikewycz was Koppers' internal medicine doctor but omitted any analysis of the required factors, including the nature, length and extent of the doctor-patient relationship, the frequency of examination, the type of tests performed, and the consistency and supportability of the opinion. The ALJ did not discuss Dr. Kmicikewycz's long and regular history of treating Koppers. This is a significant factor in weighing the treating physician's opinion:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 404.15277(c)(2)(i). Dr. Kmicikewycz had been Koppers' physician for over twenty years, and Koppers had visited him about three times a year since her alleged onset date. (R. 828). Both the length and extent of the doctor-patient relationship favor crediting Dr. Kmicikewycz's opinion. The ALJ should discuss the required regulatory factors on remand.

The Court observes that it is difficult to determine the full bases for Dr. Kmicikewycz's opinion because his notes on the Medical Source Statement and his handwritten treatment notes are largely illegible. (R. 365-73; 533-34; 573-81; 675-86; 694-96; 1074-86). On this record, it is unclear whether Dr. Kmicikewycz's notes on the Medical Source Statement and his treatment notes contain objective findings upon which he could reasonably rely in forming his opinion regarding Koppers' functional limitations. In this situation, the ALJ has a duty to recontact Dr. Kmicikewycz

to determine if she can obtain a legible copy of the record or assistance in reading the handwritten notes. Moore v. Colvin, 743 F.3d 1118, 1127 (7th Cir. 2014) (stating "[i]f the ALJ was unable to discern the basis for the treating physician's opinion, then the proper course would have been to solicit additional information from [the treating physician];" Barnett v. Barnhart, 381 F.3d 664, 669 (7th Cir. 2004) (holding "[a]n ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable."). A remand to supplement and clarify Dr. Kmicikewycz's notes and opinion is warranted. On remand, the ALJ is directed to recontact Dr. Kmicikewycz and request legible copies of his notes on the Medical Source Statement and his treatment notes or an explanation of the findings contained therein. After clarification of Dr. Kmicikewycz's notes and in light of the treating physician rule, the ALJ shall reevaluate the weight to be afforded Dr. Kmicikewycz's opinion. If the ALJ finds "good reasons" for not giving the opinion controlling weight, the ALJ shall explicitly "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's speciality, the types of tests performed, and the consistency and supportability of the physician's opinion." Campbell, 627 F.3d at 306; Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009).

Koppers raises a number of other issues in her brief, including the ALJ's adverse credibility determination and the ALJ's failure to consider a later onset date. Because the Court has determined that a remand is appropriate for the ALJ to properly address Dr. Kmicikewycz's opinion, the Court need not reach the remaining issues raised by Koppers. The ALJ should consider and revisit these issues as necessary on remand. On remand, the Court strongly encourages the ALJ to call an impartial medical expert who can assist the ALJ in assessing the nature and severity of Koppers' impairments. State agency physicians Drs. Virgilio R. Pilapil and Robert T. Patey reviewed Koppers' file in October 2006 and April 2007, respectively. (R. 70-71). There is evidence that Koppers' condition deteriorated after April 2007 and before her date last insured of June 30, 2010. It would be helpful to have a medical expert review the entire record and assess Koppers'

limitations.

Finally, Koppers requests that the Court reverse the Commissioner's decision and remand for an immediate award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion–that the applicant qualifies for disability benefits." Allord v. Astrue, 631 F.3d 411, 415 (7th Cir. 2011). The Court is troubled by the longstanding nature of this case. However, "[o]bduracy is not a ground on which to award benefits; the evidence properly in the record must demonstrate disability." Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 357 (7th Cir. 2005). Here, the ALJ's failure to properly weigh the opinion of Dr. Kmicikewycz weighs in Koppers favor, but the record does not support only one conclusion. On remand, the ALJ must reevaluate the weight to be afforded Dr. Kmicikewycz's opinion. Because the ALJ has not properly weighed all the relevant evidence, further proceedings to allow the ALJ to properly address Dr. Kmicikewycz's opinion are necessary to resolve this case.

### III.  CONCLUSION

For the reasons and to the extent stated above, Plaintiff's Motion for Summary Judgment [14] is granted. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed. The Clerk is directed to enter judgment in favor of Plaintiff Tina M. Koppers and against Defendant Commissioner of Social Security.

**E N T E R:**

*Daniel G. Martin*

---

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated: June 6, 2016**